Rooney's Estate.

Argued April 15, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Francis J. Walsh,* with him *Charles V. Halley,* for appellants.

*Raymond V. John,* with him *John C. Stevenson,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellees.

OPINION BY MR. JUSTICE STERN, May 6, 1940:

Charles P. Rooney, a former magistrate of the City of Philadelphia, died in 1930. Letters of administration were granted to William J. Hamilton, Jr., who had been appointed as escheator for the Commonwealth. Some time later a will of decedent was found in which he gave his residuary estate to the Republic Trust Company in trust to pay the income to his wife for life and at her death the principal to his sister, but both his wife and sister predeceased him. The Republic Trust Company, which was named in the will as executor, renounced its right in favor of Hamilton, and thereupon the letters of administration to Hamilton were revoked and letters of administration c. t. a. substituted. Upon the filing of the administrator's first account the Orphans' Court appointed William T. Connor, Esq., to represent the interests of any possible heirs or next of kin, with authority to make such inquiry as might accomplish the purpose of his appointment. A large number of alleged relatives appeared who made claim to the estate, and considerable

testimony was offered by them to prove their kinship with decedent, but Mr. Connor filed a report in which he recommended the rejection of all the claims.

When the second account of the administrator c. t. a. was presented for audit, some additional testimony on the part of claimants was heard in open court by Judge BOK, and some by Mr. Connor. After Judge BOK was appointed to the Common Pleas he was designated by the Orphans'. Court to preside specially therein in order to complete the audit which he had partially heard, but he did not file an adjudication. Counsel representing the claimants, the accountant, and the Commonwealth stipulated of record that, notwithstanding none of the judges then in the Orphans' Court had had the witnesses present before him, all the testimony which had been taken in the various proceedings should be submitted to Judge LADNER, and, after consideration of the record, he should adjudicate and judicially determine all the claims, with the same force and effect as if he had been the hearing judge, conditioned, however, upon Judge BOK concurring in his findings, and with the right of appeal reserved. An adjudication was filed by Judge LADNER, concurred in by Judge BOK, and approved by the court in banc, in which findings were made that decedent was not survived by any known heirs or next of kin, and that an escheat had occurred.

The Orphans' Court was the proper tribunal to decide the questions at issue: *Link's Estate (No. 1)*, 319 Pa. 513. Appellants, who constitute one of the groups of disappointed claimants, complain of the irregular nature of the proceedings. They insist that Mr. Connor acted in a nondescript capacity, that the testimony taken before him should have been heard in court, that he should not have been accorded the right to examine and cross-examine witnesses at the court hearings, that the auditing judge should not have been influenced by his report, and that the issue should have been certified to the Common Pleas for a jury trial. Whatever force, if

any, these objections might otherwise have had disappears by reason of the agreement of counsel, including those representing appellants, to submit all the testimony to Judge LADNER for his determination.

As far as the merits of the case are concerned, appellants proved their descent from their grandmother Mary Rooney, who, they claim was a sister of Patrick Rooney, the father of decedent. The proof of this sister and brother relationship, which was the vital link to be established, rested upon testimony that could scarcely be characterized as trustworthy or satisfying. It consisted of alleged declarations concerning pedigree, of a more or less vague nature, made by appellants' father, aunts, and grandmother, and of a letter alleged to have been written by decedent's mother either to appellants' grandmother or to three of their aunts, but there were many questionable features connected with this letter. The Commonwealth produced testimony to the effect that decedent, his mother, and his sister, had many times remarked to intimate friends that they had no living relatives. It would serve no useful purpose to rehearse or to attempt to analyze all the voluminous testimony which appears in the record. Suffice it to say that a careful reading of it leads to the conclusion that not only would this court not be justified in reversing the factual findings made by the Orphans' Court, but there is serious doubt whether the evidence, qualitatively or quantitatively, would have been sufficient to support contrary findings by the Orphans' Court or by any jury to which the issue might have been submitted. Appellants undoubtedly presented their claim in good faith, but, unfortunately for them, the many years which have elapsed and the lack of satisfactory documentary evidence were handicaps too great to overcome in the attempt to prove their alleged relationship to decedent.

The decree is affirmed, the parties to pay their respective costs.